**Rebecca L. FLIPPO, Plaintiff,**

v.

**AMERICAN HOME PRODUCTS CORPORATION, Defendant.**

**Civil Action Number 398CV804.**

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 9, 1999.

Beverly Constance Powell, Macaulay Lee & Powell, P.C., Richmond, VA, Mark Edward Herrmann, Macaulay, Lee & Powell, P.C., Richmond, VA, for Rebecca L. Flippo.

Kimberly W. Daniel, Mays & Valentine, Richmond, VA, Daryl Eugene Webb, Jr., Mays & Valentine, Richmond, VA, for American Home Products Corporation. ·

Paul D. Ramshaw, Equal Employment Opportunity, Commission, Washington, DC, Johnnie L. Johnson, Jr., Reston, VA, for Equal Employment Opportunity Commission.

### *MEMORANDUM OPINION*

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the Defendant's motion to dismiss. Plaintiff, Rebecca L. Flippo, ("Plaintiff") brings this wrongful termination case against her former employer, American Home Products Corporation ("Defendant"). Her two-count complaint alleges a violation of the Americans with Disabilities Act (the "ADA"), *see* 42 U.S.C. § 12101 *et seq.* and breach of contract. The Court has previously denied Defendant's motion for summary judgment. Defendant has since submitted a motion to dismiss the ADA claim on jurisdictional grounds, pursuant to Federal Rule of Civil Procedure 12(b)(1). For

the following reasons, the Court denies that motion.

## I. RELEVANT FACTS

The Defendant terminated Plaintiff's employment on April 8, 1997. On May 9, 1997, before retaining counsel, Plaintiff visited the Richmond, Virginia office of the Equal Employment Opportunity Commission (the "EEOC") to lodge a complaint against Defendant. Plaintiff first completed an intake questionnaire in which she made general accusations of disability discrimination. An EEOC intake officer then conducted a lengthy interview in which Plaintiff provided a more detailed version of her medical condition and the circumstances surrounding the termination of her employment.

The EEOC staff then prepared a standard charge of discrimination form ("EEOC Form 5"), that Plaintiff signed under penalty of perjury. The completed EEOC Form 5 summarized the essential facts of Plaintiff's claim and concluded "I believe I was discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990." Plaintiff's EEOC Form 5 contains a box that a complainant may check accompanied by text that states "I want this charge filed with both the EEOC and the State or local Agency, if any." Plaintiff checked this box on her EEOC Form 5.

By checking this box, the Plaintiff instructed the EEOC to refer her charge of discrimination to the Virginia Council on Human Rights ("VCHR"). The VCHR is a state administrative agency with limited powers to investigate and, when possible, mediate allegations of discriminatory employment practices within Virginia. *See generally* Va.Code Ann. § 2.1–720. Accordingly, the EEOC and the VCHR share administrative jurisdiction over many discrimination claims lodged in Virginia. Recognizing this overlapping jurisdiction, the two agencies have entered into a Worksharing Agreement (the "Agreement"). The Agreement designates each agency as an agent of the other for the "purpose of receiving and drafting charges."

On May 17, 1997, and in accordance with the Agreement and Plaintiff's instructions, the EEOC forwarded Plaintiff's EEOC Form 5 and a transmittal form ("EEOC Form 212") to the VCHR. Upon referral from the EEOC, and again in accordance with the Agreement, the VCHR promptly elected not to investigate Plaintiff's claim. On May 28, 1997, the VCHR returned EEOC Forms 5 and 212 to the EEOC. On September 30, 1998, the EEOC issued Plaintiff a right-to-sue letter. Plaintiff then timely filed this suit on December 23, 1998, alleging a violation of the ADA as well as breach of contract.

## II. LEGAL ANALYSIS

■ Defendant has filed a motion to dismiss Plaintiff's ADA claim pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642 (4th Cir.1999). In analyzing a motion submitted under Rule 12(b)(1), the Court may consider evidence outside the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995).

### A. Commencing Proceedings Under State Law

Before a plaintiff may sue under the ADA, she must satisfy certain administrative requirements imposed by Section

---

1. The Defendant argues that the Court, after dismissing the federal claim, should decline to exercise supplemental jurisdiction over the state contract claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Plaintiff argues that, although not pled in the complaint, diversity jurisdiction exists and provides an independent basis for retaining jurisdiction over the state law claim. *See* 28 U.S.C. § 1332. Because the Court denies the Defendant's pending motion to dismiss, it need not address the parties' jurisdictional arguments regarding Count II.

706(c) of Title VII.[2] *See* 42 U.S.C. § 2000e–(5)(c). These requirements vary by state. Virginia is a "deferral state." *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 440 (4th Cir.1998).[3] In a deferral state, a person alleging discrimination benefits from a longer period of time in which to file her charge of discrimination. *See* 42 U.S.C. § 2000e–5(e) (granting a complainant in a deferral state 300, rather than 180, days in which to file a charge following the allegedly discriminatory act). This extended period of time is accompanied, however, by the requirements that the complainant "commence proceedings" with the deferral agency "under state law" before filing suit. *See* 42 U.S.C. § 2000e–5(c).[4] Case law from the United States Court of Appeals for the Fourth Circuit reiterates this statutory requirement. *See Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 138 (4th Cir.1995) ("a claimant . . . may not proceed . . . until state proceedings under state law have commenced . . .").

 The Defendant acknowledges that state administrative proceedings have been commenced. However, because Plaintiff's EEOC Form 5 stated merely that "I believe I have been discriminated against because of my disability in violation of the Americans with Disability act of 1990[,]" the Defendant maintains that the Plaintiff did not commence those proceedings "under state law" as Section 706(c) requires.[5] *See id.* It maintains that a complainant must cite or explicitly refer to some state statute in order to commence proceedings "under state law." [6] The Plaintiff argues that no explicit reference to state law is necessary to satisfy Section 706(c).

### B. Recent Decisions on the Issue

Title VII does not detail exactly what a complainant must do to commence proceedings "under state law." On at least one occasion, however, the Fourth Circuit has held that a plaintiff's actions were insufficient to commence proceedings "under state law." *See Dodge v. Philip Morris, Inc.*, No. 98–1968, 1999 WL 162955 (4th Cir. March 25, 1999). In that case, the plaintiff neither checked the box on EEOC Form 5 referring the matter to the VCHR nor explicitly cited state law in the charge of discrimination filed with the EEOC. *See Dodge*, 1999 WL 162955 at *1. The Court concluded that "[b]ecause [plaintiff] never pursued her claims under state law, her charges were never properly pending before the EEOC," *see id.*, at *2, and "because [plaintiff] failed to include a state claim in her EEOC charge, she failed to satisfy the prerequisites for federal jurisdiction." *See id.*, at *1.

More on point are three recent decisions from the Western District of Virginia. Each considered the precise issue pending before this Court: does a plaintiff who properly refers her charge of discrimination to the VCHR without explicitly citing

---

2. Though a part of Title VII, this statute applies equally to ADA claims. *See* 42 U.S.C. § 12117(a).

3. This was not always so. Virginia was long considered not to be a deferral state. *See, e.g., Tokuta v. James Madison University*, No. 97–2445, 1998 WL 811787 (4th Cir. Nov.23, 1998).

4. This requirement is designed to achieve the salutary purpose of settling claims of discrimination in a "voluntary and localized manner" whenever possible. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (quoting 110 Cong.Rec. 12725 (1964)).

5. If an ADA complainant does not satisfy Section 706(c), then the EEOC may not act on a complainant's charge of discrimination. This, in turn, would deprive the Court of subject matter jurisdiction. *See Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir.1994) ("[T]he filing of a sworn charge of discrimination with the EEOC is a mandatory prerequisite. . . .").

6. State statutes applicable to Plaintiff's claim would include the Virginians with Disabilities Act (the "VDA"), *see* Va.Code Ann. § 51.5–1, *et seq.*, and the Virginia Human Rights Act (the "VHRA"), *see* Va.Code Ann. § 2.1–714, *et seq.*

state law "commence proceedings under state law" and therefore satisfy the threshold administrative requirements of § 706(c)? The decisions have reached contradictory outcomes. *Compare Walker v. Electrolux Corp.*, No. 96–0201–A, 1999 WL 455346 (June 9, 1999, W.D.Va.) (pending publication) (dismissing suit for lack of jurisdiction when complainant who properly referred charge of discrimination to VCHR explicitly alleged no violation of state law); [7] *with Harris v. The TJX Companies, Inc.*, —— F.Supp.2d ——, 5:98cv0094 (slip opinion) (W.D.Va. June 28, 1999) (retaining jurisdiction over suit in which complainant's charge of discrimination filed with VCHR explicitly alleged no violation of state law); and *Grimes v. Canadian American Transportation, Inc.*, 98–0409 (slip opinion) (W.D.Va. July 28, 1999) (same).[8]

### C. This Court's Analysis

In contrast to the plaintiffs in the cases cited above, Ms. Flippo has presented the Court with substantial evidence detailing both her intent in submitting the claim to the EEOC and the manner in which that claim was processed and considered by the EEOC and the VCHR.

Plaintiff's affidavit states: "When I went to the EEOC, I wanted protection from discrimination because of my disability and I wanted my job back. I wanted this relief under any law—state or federal— that would protect me." *See* Flippo Affidavit at p. 6. This fact alone distinguishes the instant case from *Davis*, in which the

plaintiff "insist[ed]" and "steadfastly maintain[ed]" that he sought relief under federal, but not state, law. *Davis*, 49 F.3d at 139, 141.

In addition to this evidence, Plaintiff has submitted evidence regarding the manner in which the VCHR received and processed her claim. Sandra Norman is an official with the VCHR who participated in processing Plaintiff's claim.[9] She has submitted an affidavit that the VCHR neither requires nor expects complainants to explicitly cite state or federal statutes or regulations. *See* Norman Affidavit at ¶ 9. Instead, the VCHR requires only a brief factual statement documenting the alleged discrimination and identifying the employer. *See id.* The VCHR then determines which, if any, statutes or regulations may be implicated by complainant's factual allegations. *See id.*

Referring specifically to Plaintiff's EEOC Form 5, Norman states:

> The facts contained in the documents we received from the EEOC were sufficient to apprise the VCHR of any potential claims or complaints Ms. Flippo may have had relating to employment discrimination on the basis of disability, including any potential claims or complaints under the Virginia Human Rights Act or other state or federal laws or regulations, and constituted an adequate filing of such claims with our office.

*See id.*, at ¶ 13.[10] The EEOC, appearing as an amicus in this case, concurs with

---

**7.** The court in *Walker* based its inquiry not on the whether a state law claim was contained in EEOC Form 5, but instead on whether such a claim was present in the plaintiff's amended complaint. *See Walker*, 55 F.Supp.2d 501, 503–04. The plaintiff's complaint, however, is immaterial in determining whether administrative exhaustion has occurred. Instead, it seems to this Court that EEOC Form 5 is the operative document upon which the inquiry of whether proceedings have been commenced "under state law" for the purposes of § 706(c) should be based.

**8.** *See also Sonia Wilson v. Miller Auto Sales, Inc., et al.*, Law No. 97–281 (slip opinion),

(Winchester Circ. Ct., July 30, 1999) (denying defendant's motion to dismiss on the same grounds).

**9.** Ms. Norman's involvement with Plaintiff's claim is evidenced by her signature on EEOC Form 212 referring the charge of discrimination back to EEOC for investigation.

**10.** This evidence mandates precisely the opposite conclusion of that reached by the court in *Walker*, which determined that the plaintiff in that case did not "allow VCHR to attempt

Norman's conclusion. Accordingly, the two agencies whose participation and cooperation Section 706(c) was drafted to ensure consider Plaintiff's charge of discrimination sufficient to commence proceedings under state law. The Court finds this interpretation reasonable and therefore considers it deferentially. *EEOC v. Techalloy Md., Inc.,* 894 F.2d 676, 678–79 (4th Cir.1990) ("[D]eference is due [these agencies'] reasonable interpretation of when state proceedings are commenced and terminated under § 706(c) ... of the Act") (citations omitted).

■ Even absent deferential consideration, the interpretation appears to be squarely supported by Title VII, by the Virginia Administrative Code, and by the agencies' Agreement. In detailing the manner in which the deferral time period was to be calculated, Congress clearly indicated that "a written and signed statement of facts" could alone satisfy Section 706(c) if state law required no more. *See* 42 U.S.C. § 2000e–5(c) ("if any requirement ... is imposed ... other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based ..." then complainant's registered mailing of the complaint commences proceedings). The Virginia Administrative Code imposes no additional requirements. *See* Va.Admin.Code § 25–10–50(B) (requiring that a charge lodged with the VCHR contain only a "written statement which identifies the parties and describes generally the action or practices complained of"). Similarly, the Agreement the two agencies executed imposes no requirement that specific statutes be cited. *See* Agreement, at I, ¶ II.A ("EEOC's receipt of charges on the [VCHR's] behalf will automatically initiate the proceedings of both EEOC and the [VCHR] for the purposes of Section 706(c) and (e)"). Thus, in Virginia, a written statement of facts lacking any citation to specific state statutes is sufficient to commence proceed-

ings under state law and satisfy Section 706(c).

■ Although the above analysis seems to the Court to be independently sufficient, there are other important reasons that the Court concludes that a complainant need not cite specific state statutes to comply with Section 706(c). Title VII and the ADA are remedial legislation. Courts are therefore commanded to construe these acts of Congress broadly to effectuate their purposes. *See Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The Virginia Human Rights Act explicitly contains a similar mandate. *See* Va.Code Ann. § 2.1–717. Finally, worksharing agreements between the EEOC and state deferral agencies should be interpreted to effectuate the intent of these agencies to comply with § 706. *Techalloy Md.,* 894 F.2d at 678–79. These cannons of statutory and regulatory construction erase any remaining doubt about the sufficiency of Plaintiff's charge of discrimination.

■ In addition, the Court is instructed to leniently construe documents filed *pro se.* At the time Plaintiff lodged her complaint with the EEOC, she was not represented by counsel. *See* Flippo Affidavit at ¶ 5. Plaintiff has no legal background. Only after leaving high school did she obtain her GED. *Id.,* at ¶ 7. Courts are instructed to liberally interpret charges of discrimination resulting from such circumstances. *See generally Alvarado v. Board of Trustees,* 848 F.2d 457, 460 (4th Cir. 1988) ("Title VII does not require procedural exactness from lay complainants: EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading") (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Emp.,* 525 F.2d 1354, 1359 (9th Cir.1975)).

■ Finally, the Court notes that the standards for liability under the Virginians

to solve [plaintiff's] problem through the mechanism set up by the state of Virginia."

*See Walker,* 55 F.Supp.2d 501, 503–04.

with Disabilities Act, Va.Code Ann. § 51.5–40, *et seq.*, (the "VDA") "follow the standards . . . adopted in the ADA." *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 215 (4th Cir.1994) (citing *Eastman v. Virginia Polytechnic Institute*, 732 F.Supp. 665, 666 (W.D.Va.1990), *aff'd on other grounds*, 939 F.2d 204 (4th Cir.1991)). In addition, the VHRA makes conduct that "violates any federal statute governing discrimination on the basis of . . . disability . . . an 'unlawful discriminatory practice' for the purposes of this chapter." Va.Code Ann. § 2.1–716. Because the legal standards governing the acts are substantively identical, the allegation that the Defendant violated the ADA necessarily includes the implicit allegation that the Defendant also violated the VDA and the VHRA. To insist that these substantively identical statutes be independently cited would serve no rationale purpose.

### CONCLUSION

Congress' intent to ensure that willing states investigated and resolved discrimination claims whenever possible has been satisfied. The VCHR received Plaintiff's complaint and was provided all the information necessary to evaluate her claim under state law. Neither Title VII, state codes or regulations, nor the agencies' Agreement require more. The Court holds that Plaintiff successfully commenced state proceedings under state law when she provided the EEOC a written statement of relevant facts and asked that the charge of discrimination be forwarded to the VCHR. To hold otherwise would transform the laudatory effort to achieve state and federal cooperation in resolving claims of discrimination into a jurisdictional minefield for unwary and unrepresented complainants. Because no authority commands such an outcome, the Court shall deny Defendant's motion to dismiss.

Because, however, this decision involves a controlling question of law as to which courts have differed, and because an immediate appeal of this issue may materially advance the ultimate termination of this and related litigation, this Court certifies the issue for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

An appropriate Order shall issue.

### ORDER

This matter is before the Court on Defendant's motion to dismiss. For the reasons stated in the accompanying Memorandum Opinion, that motion is DENIED.

Because, however, this decision involves a controlling question of law as to which courts have differed, and because an immediate appeal of this issue may materially advance the ultimate termination of this and related litigation, this Court CERTIFIES the issue for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Let the Clerk send a copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to the Equal Employment Opportunity Commission at the address contained in the Court's file.

It is so ordered.